# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

In re:

**MICHAEL LANE,**                                                   **CHAPTER 13**

        **DEBTOR.**                                     **CASE NO. 15-33669-KRH**

**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT,**

        **MOVANT,**

**vs.**

**MICHAEL LANE**
**and SUZANNE E. WADE, TRUSTEE,**

        **RESPONDENTS.**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (REAL PROPERTY LOCATED AT 351 DABBS HOUSE RD, RICHMOND, VA 23223)

<u>NOTICE</u>

<u>YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE.  (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)</u>

**TO:**    **MICHAEL LANE, DEBTOR**
        **SUZANNE E. WADE, TRUSTEE**

<u>IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT.  UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.</u>

<u>IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.</u>

**THE PRELIMINARY HEARING IS SCHEDULED TO BE HELD ON SEPTEMBER 5, 2018 AT 11:00 A.M.  IN THE U.S. BANKRUPTCY COURT, 701 EAST BROAD STREET, RICHMOND, VA 23219, COURTROOM 5000.**

      U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of **351 Dabbs House Rd, Richmond, VA 23223** (the "Property"), for all purposes

Brandon R. Jordan, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 72170
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
(804) 290-4290
File No. 63201

allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose.  In further support of this Motion, Movant respectfully states:

1.       This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157 and §1334 and 11 U.S.C. §362(d), and this matter is a core proceeding.

2.       A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on July 22, 2015.

3.       A Chapter 13 Plan was confirmed on February 2, 2016.

4.       The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $200,000.00 (the "Note").  A copy of the Note is attached hereto as <u>Exhibit A</u>.

5.       Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust.  The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Henrico, Virginia.  A copy of the recorded Deed of Trust is attached hereto as <u>Exhibit B</u>.

6.       The legal description of the Property is:

**ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, LYING AND BEING IN FAIRFIELD MAGISTERIAL DISTRICT, HENRICO COUNTY, VIRGINIA, AS SHOWN UPON A PLAT OF SURVEY MADE BY CHAS. H. FLEET AND ASSOCIATES CIVIL ENGINEERS AND SURVEYORS DATED JUNE 21, 1954, ATTACHED TO A CERTAIN DEED DATED JULY 31, 1954, BETWEEN C.H. HILLIARD AND CHRISTINA M. HILLIARD, HIS WIFE GRANTORS AND THE THEN ACTING TRUSTEES OF THE BISHOP MEMORIAL METHODIST CHURCH, GRANTEES, WHICH DEED IS RECORDED IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF HENRICO COUNTY IN DEED BOOK 689, PAGE 130. SAID PLAT IS ENTITLED "PLAT OF PROPERTY SITUATED ON THE EASTERN LINE OF DABBS HOUSE ROAD AND NORTH OF NINE MILE ROAD", AND ACCORDING TO SAID PLAT MORE PARTICULARLY DESCRIBED AS FOLLOWS:**
**BEGINNING AT A POINT ON THE EASTERN LINE OF DABBS HOUSE ROAD, NOW 50 FEET WIDE, AT AN IRON PIPE, WHICH SAID POINT OF BEGINNING IS DISTANT 645.88 FEET NORTHWARDLY FROM INTERSECTION OF THE NORTHERN LINE OF NINE MILE ROAD WITH THE EASTERN LINE OF DABBS HOUSE ROAD, AS WIDENED, THENCE RUNNING NORTH 9 DEGREES 30' EAST 100 FEET ALONG AND FRONTING ON THE EASTERN LINE OF DABBS HOUSE ROAD TO AN IRON PIPE, THENCE RUNNING SOUTH 79 DEGREES 10; 30" EAST 150 FEET TO AN IRON PIPE, THENCE RUNNING 9 DEGREES 30' WEST 100 FEET TO AN IRON PIPE, THENCE RUNNING SOUTH 79 DEGREES 10' 50' WEST 140 FEET TO AN IRON PIPE, THENCE RUNNING SOUTH 79 DEGREES 10' 50' WEST 140 FEET ALONG THE NORTHERN LINE OF DABBS HOUSE ROAD THE POINT AND PLACE OF BEGINNING.**

**THE PROPERTY IS COMMONLY KNOWN AS:**
**351 DABBS HOUSE ROAD, RICHMOND, VA 23223**

7.       Rushmore Loan Management Services, LLC is servicing agent for the Movant.

8.       As of August 3, 2018, the unpaid principal balance due is $115,257.47 and the approximate outstanding amount of Obligations less any partial payments or suspense balance is $115,986.12.

9.      The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note as of August 3, 2018:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 3 | 06/01/2018 | 08/01/2018 | $1,119.07 | $3,357.21 |
| Less post-petition partial payments (suspense balance): | | | | ($999.00) |
| | | | **Total:** | **$2,358.21** |

10.      As of August 3, 2018, the total post-petition arrearage/delinquency is $2,467.71 consisting of (i) the foregoing total of post-petition payments in the amount of $2,358.21, plus (ii) the following fees:

| Fee Description | Amount |
|---|---|
| Property Inspections | $109.50 |

11.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $1,031.00 in legal fees and costs.

12.      The estimated value of the Property is $140,300.00.  The basis for such valuation is: Tax Assessment, a copy of which is attached hereto as <u>Exhibit C</u>.

13.      Cause exists for relief from the automatic stay for the following reasons:

   i.      Movant's interest in the Property is not adequately protected.

   ii.      Post-Petition payments required by the confirmed plan have not been made to Movant.


WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.      For such other relief as the Court deems proper.

Dated: August 3, 2018

U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT

By: **/s/ BRANDON R. JORDAN**

Eric D. White, Esquire, Bar No. 21346
Michael T. Freeman, Esquire, Bar No. 65460
Brandon R. Jordan, Esquire, Bar No. 72170
Johnie R. Muncy, Esquire, Bar No. 73248
Nisha R. Patel, Esquire, Bar No. 83302
Samuel I. White, P.C.
1804 Staples Mill Road, Suite 200
Richmond, VA 23230
Tel.: (804) 290-4290
Fax: (804) 290-4298
bjordan@siwpc.com

## CERTIFICATE OF SERVICE

I certify that on August 3, 2018, the foregoing Motion was served via CM/ECF on Suzanne E. Wade, Trustee, and Joseph S. Massie, III, Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Michael Lane, Debtor, 351 DabbsHouse Road, Richmond, VA 23223.

**/s/ BRANDON R. JORDAN**

Brandon R. Jordan, Esquire
Samuel I. White, P. C.



**Exhibit**

**A**

# ADJUSTABLE RATE NOTE

(LIBOR Six-month Index (As Published In *The Wall Street Journal*) — Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**March 10, 2006**       **RICHMOND**             **VA**
                         [City]                   [State]

**351 Dabbs House Rd
RICHMOND, VA 23223**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **$200,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **Accredited Home Lenders, Inc., A California Corporation** . I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **8.699%** . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the **1st** day of every month, beginning on **May 1, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **April 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 502480 San Diego, CA 92150-2480** or at a different place if required by the Note Holder.

Initials: *MAL*

ARMNOTE1.UFF    Lane    AHL modified FannieMae 3520 (1/01)
              Page 1 of 6

Represents Redacted Information

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **1,566.13.** This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the **1st** day of **April, 2011** and on the **1st** of every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five And Six-hundred Ninety-nine Thousandth(s)** percentage points ( **5.699 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.199%** or less than **8.699%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage point(s) **(1.500)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **15.699%** or less than **8.699%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY  - See Prepayment Rider attached hereto.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayment. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payment after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Seven** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Initials: *MAL*

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Initials: *MAL*

ARMNOTE4.UFF                     Lane
                                 Page 4 of 6                     AHL modified FannieMae 3520 (1/01)

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: *MAL*

ARMNOTE5.UFF

Lane

Page 5 of 6

AHL modified FannieMae 3520 (1/01)

**BY SIGNING BELOW**, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Note.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_Michael A Lane_ 3|10|06

| Borrower | Date | Borrower | Date |
|---|---|---|---|
| Michael A Lane | | | |

| Borrower | Date | Borrower | Date |

| Borrower | Date | Borrower | Date |

| Borrower | Date | Borrower | Date |

ARMNOTE6.UFF

Lane
Page 6 of 6

AHL modified FannieMae 3520 (1/01)

## PREPAYMENT CHARGE RIDER TO NOTE

THIS PREPAYMENT CHARGE RIDER TO NOTE is made this 10th day of March, 2006, and is incorporated into and shall be deemed to amend and supplement the Note or Adjustable Rate Note, as applicable (the "Note"), of the same date given by the undersigned Borrower(s) to Accredited Home Lenders, Inc., A California Corporation.

### NOTICE TO THE BORROWER

**DO NOT SIGN THIS PREPAYMENT CHARGE RIDER TO NOTE BEFORE YOU READ IT. THIS RIDER TO NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.**

**The provisions of this Prepayment Charge Rider to Note are authorized by applicable state law or the federal Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801 et seq.**

### PREPAYMENT CHARGE

I/we may make a full prepayment or partial prepayments. However, if the total amount of the prepayment(s) received during any 30-day period within Sixty (60) months from the date of the Note exceeds ten percent (10%) of the original principal amount of the Note, then as consideration for the acceptance of such prepayment(s), I/we agree to pay the holder of the Note a sum equal to two percent (2%) of the entire amount so prepaid. Any prepayments made after said initial Sixty (60) month period shall not be subject to any prepayment charge.

X _Michael A Lane_ 3/10/06

| Borrower | Date | Borrower | Date |
|---|---|---|---|
| Michael A Lane | | | |

| Borrower | Date | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

VA 1st O/O - 5 yrs.

AHL PPR-VAOO.UFF

Lane
Page 1 of 1

Loan No: ████████

Mortgagee: Michael A Lane

Address:    351 Dabbs House Rd
            RICHMOND, VA 23223

Loan Amount:$ 200,000.00

# ALLONGE TO NOTE

PAY TO THE ORDER OF:            Washington Mutual, ...

_____

WITHOUT RECOURSE

*Linda L. Chen-Luke*
LInda L Chen-Luke
Assistant Secretary
Accredited Home Lenders, Inc., A California Corporation

AHL 620017.UFF                  Lane
                                Page 1 of 1

# ALLONGE TO MORTGAGE NOTE

**LOAN NUMBERS:** ▮▮▮▮▮▮▮

**NOTE DATED:**         March 10, 2006

**LOAN AMOUNT:**     $200,000.00

**MORTGAGOR(S):**    Michael A. Lane

**PROPERTY ADDRESS:**    351 Dabbs House Rd.

                Richmond, VA 23223

Allonge to one certain Mortgage Note dated        March 10, 2006        in favor     of

Accredited Home Lenders, Inc.

Executed by     Michael A. Lane

**Pay to the order of   JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC**

Without Recourse

**SELLER:**   **JPMorgan Chase Bank, NA Successor in interest by Purchase from the
Federal Deposit of Insurance Corporation, as Receiver for Washington Mutual
Bank, F/K/A Washington Mutual Bank, F.A.**

**BY:** _Stanley Alford_

Stanley Alford/ Vice President

Authorized officer

# ALLONGE TO MORTGAGE NOTE

**LOAN NUMBER:** ██████████

**NOTE DATED:**  March 10, 2006

**LOAN AMOUNT**: $200,000.00

**MORTGAGOR(s):**   Michael A. Lane

**PROPERTY ADDRESS:**   351 Dabbs House Road, Richmond, Virginia 23223

Allonge to one certain Mortgage Note dated, **March 10, 2006**  in favor of
**Accredited Home Lenders, Inc., A California Corporation**, executed by
**Michael A. Lane**.

**Pay to the order of:**

Without Recourse

**SELLER:**  **JPMC SPECIALTY MORTGAGE LLC F/K/A WM
SPECIALTY MORTGAGE LLC**

**BY:**

_____

**Christian G. Dunn**
**Vice President**

**Exhibit B**

BK4087PG0114

RECORD & RETURN TO:
ABSTRACT AGENCY OF PA. INC.
111 SINCLAIR RD
BRISTOL PA 19007

Return To:
Accredited Home Lenders, Inc.
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

Tax Map Reference #:

Prepared By:Accredited Home Lenders, Inc.
          A California Corporation
          15090 Avenue of Science
          San Diego, CA 92128

prepared by: Mike Bein ———[Space Above This Line For Recording Data]———

## DEED OF TRUST

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by MICHAEL A. LANE

Borrower (trustor), to ~~COMMONWEALTH TRUSTEES LLC~~  Richard Oppenheim
                                          3937 University Drive
                                          Fairfax, VA 22030                    , as

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3047  1/01

-6A(VA) (0102).01

Page 1 of 15                    Initials: MAL

VMP MORTGAGE FORMS - (800)521-7291

Represents Redacted Information

BK4087PG0115

(A) "Security Instrument" means this document, which is dated March 10, 2006
together with all Riders to this document.

(B) "Borrower" is MICHAEL A. LANE

Borrower is the trustor under this Security Instrument.

(C) "Lender" is  Accredited Home Lenders, Inc.
                 A California Corporation
Lender is a Corporation
organized and existing under the laws of the State of California
Lender's address is 15090 Avenue of Science
                    San Diego, CA 92128

(D) "Trustee" is COMMONWEALTH TRUSTEES LLC

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation whose principal office is located in Virginia. Trustee's address is
, CHANTILLY, VA 20152
"Trustee" is N/A

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered
corporation whose principal office is located in Virginia. Trustee's address is
N/A

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated March 10, 2006
The Note states that Borrower owes Lender two hundred thousand and 00/100
                                                                              Dollars
(U.S. $200,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 1, 2036        . The interest rate
stated in the Note is eight and six-hundred ninety-nine thousandth(s)
                                        percent (           8.699 %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in
accordance with the attached Adjustable Rate Rider.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

Initials: _MAL_

VMP -6A(VA) (0102).01              Page 2 of 15                    Form 3047  1/01

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials: _MAC_

BK4087PG0117

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                     [Type of Recording Jurisdiction] of HENRICO                                     [Name of Recording Jurisdiction]:

See Legal Description Addendum Page Attached

which currently has the address of 351 Dabbs House Rd

[Street]

RICHMOND/HENRICO                     [City/County], Virginia 23223          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials: MAL

VMP-6A(VA) (0102).01                          Page 4 of 15                          Form 3047   1/01

BK4087PG0118

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such

Initials: *MAL*

-6A(VA) (0102).01                    Page 5 of 15                    Form 3047   1/01

BK4087PG0119

amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the

BK4087PG0120

payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain Insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or

Initials: _MAL_  

BK4087PG0121

condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage

BK4087PG0122

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

Initials: _MAL_

BK4087PG0123

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the

BK4087PG0124

permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of

BK4087PG0125

Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials: _MHL_

BK4087PG0126

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

Initials: _MAL_



-6A(VA) (0102).01                    Page 13 of 15                    Form 3047  1/01

BK4087PG0127

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
Michael A Lane                    -Borrower

_____

_____ (Seal)
                                  -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                                    -Borrower

-6A(VA) (0102).01                    Page 14 of 15                    Form 3047  1/01

BK4087PG0128

**STATE OF VIRGINIA,** Henrico                    **County, ss:**

The foregoing instrument was acknowledged before me this 10th day of March, 2006 by
**Michael A Lane**

My Commission Expires: 3/31/09                    _____
                                                  Notary Public

VMP®-6A(VA) (0102).01                Page 15 of 15        Initials: MAL        Form 3047   1/01

# ADJUSTABLE RATE RIDER

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)–Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **10th** day of **March , 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust. or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Accredited Home Lenders, Inc., A California Corporation** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**351 Dabbs House Rd**
**RICHMOND, VA 23223**
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **8.699%**. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the **1st** day of **April, 2011** and on the **1st** day of every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

Initials: *MAL*

ARMRIDR1.UFF

Lane
Page 1 of 3

AHL modified FannieMae 3138 (1/01)

BK4087PG0130

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five And Six-hundred Ninety-nine Thousandth(s)** percentage points **(5.699%)** to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.199%** or less than **8.699%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage points ( **1.500%** ) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **15.699%** or less than **8.699%**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: *MAL*

ARMRIDR2.UFF

Lane
Page 2 of 3

AHL modified FannieMae 3138 (1/01)

BK4087PG0131

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Michael A. Lane_ 3/10/06
Borrower                                    Date

Michael A Lane

_____    _____
Borrower                                    Date        Borrower                                    Date

_____    _____
Borrower                                    Date        Borrower                                    Date

_____    _____
Borrower                                    Date        Borrower                                    Date

_____    _____
Borrower                                    Date        Borrower                                    Date

ARMRIDR3.UFF                    Lane                    AHL modified FannieMae 3138 (1/01)
                                Page 3 of 3

BK 4087 PG 0132

## *First American Title Insurance Company*

### SCHEDULE C

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, LYING AND BEING IN FAIRFIELD
MAGISTERIAL DISTRICT, HENRICO COUNTY, VIRGINIA, AS SHOWN UPON A PLAT OF
SURVEY MADE BY CHAS. H. FLEET AND ASSOCIATES CIVIL ENGINEERS AND SURVEYORS
DATED JUNE 21, 1954, ATTACHED TO A CERTAIN DEED DATED JULY 31, 1954, BETWEEN
C.H. HILLIARD AND CHRISTINA M. HILLIARD, HIS WIFE GRANTORS AND THE THEN
ACTING TRUSTEES OF THE BISHOP MEMORIAL METHODIST CHURCH, GRANTEES, WHICH DEED
IS RECORDED IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF HENRICO COUNTY IN
DEED BOOK 689, PAGE 130. SAID PLAT IS ENTITLED "PLAT OF PROPERTY SITUATED ON
THE EASTERN LINE OF DABBS HOUSE ROAD AND NORTH OF NINE MILE ROAD", AND
ACCORDING TO SAID PLAT MORE PARTICULAR DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT ON THE EASTERN LINE OF DABBS HOUSE ROAD, NOW 50 FEET
WIDE, AT AN IRON PIPE, WHICH SAID POINT OF BEGINNING IS DISTANT 645.88 FEET
NORTHWARDLY FROM INTERSECTION OF THE NORTHERN LINE OF NINE MILE ROAD WITH THE
EASTERN LINE OF DABBS HOUSE ROAD, AS WIDENED, THENCE RUNNING NORTH 9 DEGREES
30' EAST 100 FEET ALONG AND FRONTING ON THE EASTERN LINE OF DABBS HOUSE ROAD
TO AN IRON PIPE, THENCE RUNNING SOUTH 79 DEGREES 10; 30" EAST 150 FEET TO AN
IRON PIPE, THENCE RUNNING 9 DEGREES 30' WEST 100 FEET TO AN IRON PIPE, THENCE
RUNNING SOUTH 79 DEGREES 10' 50' WEST 140 FEET ALONG THE NORTHERN LINE OF
DABBS HOUSE ROAD THE POINT AND PLACE OF BEGINNING.

FOR INFORMATION PURPOSES ONLY
THE PROPERTY IS COMMONLY KNOWN AS:
351 DABBS HOUSE ROAD, RICHMOND, VA 23223

...END OF REPORT

INSTRUMENT #15690
RECORDED IN THE CLERK'S OFFICE OF
HENRICO COUNTY ON
MARCH 21, 2006 AT 01:15PM
YVONNE G. SMITH, CLERK

RECORDED BY: KLB

Instrument Control Number

LR 200606015690 03/21/2006 1:15:00 PM

## Commonwealth of Virginia
### Land Record Instruments
### Cover Sheet - Form A

[ILS VLR Cover Sheet Agent 1.0.93]

*AC052 C*

*P*

*Lane*

*YE W[...]*

BK4087PG0113

(Box for Deed Stamp Only)

| T A X   E X E M P T | C O R P | | |
|---|---|---|---|

Date of Instrument:  [3/17/2006   ]

Instrument Type:  [DOT   ]

Number of Parcels  [   1]

Number of Pages  [   19]

City [ ]  County [x]  [Henrico County   ]

### First and Second Grantors

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [LANE   ] | [MICHAEL   ] | [A   ] | [   ] |
| [   ] | [   ] | [   ] | [   ] |

### First and Second Grantees

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [OPPENHEIM   ] | [RICHARD   ] | [   ] | [   ] *TR* |
| [   ] | [   ] | [   ] | [   ] |

Grantee Address   (Name)   [RICHARD OPPENHEIM   ]
(Address 1)   [3937 UNIVERSITY DRIVE   ]
(Address 2)   [   ]
(City, State, Zip)   [FAIRFAX   ] [VA] [22030   ]

Consideration [200,000.00   ] Existing Debt [0.00   ] Assumption Balance [0.00   ]

Prior Instr. Recorded at: City [ ]  County [x]  [Henrico County   ] Percent. in this Juris.  [   100]

Book   [   ]   Page   [   ]   Instr. No  [   ]

Parcel Identification No (PIN)

Tax Map Num.   (if different than PIN)

Short Property Description   [PLAT OF PROPERTY SITUATED ON THE EASTERN LINE OF   ]
[   ]

Current Property Address  (Address 1)  [351 DABBS HOUSE ROAD   ]
(Address 2)  [   ]
(City, State, Zip)  [RICHMOND   ] [VA ] [23223   ]

Instrument Prepared By   [MIKE BAIN   ]

Recording Paid for By   [MORTGAGE INFORMATION SERVICES   ]

Return Recording To  (Name)  [MIS   ]
(Address 1)  [111 SINCLAIR ROAD   ]
(Address 2)  [   ]
(City, State, Zip)  [BRISTOL   ] [VA ] [19007   ]

Customer Case ID   [   ] [   ]

Cover Sheet Page # 1 of 1

**CHASE**

**MODIFICATION AGREEMENT**

Borrower ("I"): **Michael Lane**
Lender or Servicer ("Lender"): **JP Morgan Chase Bank, N.A.**
Date of mortgage, deed of trust, or security deed ("Mortgage") and Note or Line of Credit Agreement ("Note"): **March 10, 2006**
Loan Number: ▮▮▮▮▮▮▮▮▮▮
Property Address ("Property"): **351 Dabbs House Rd, Richmond, VA 23223**

If I successfully follow the Loan Workout Plan (the "Plan") in Section 2 and my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations.** I represent to Lender and agree:

    A.   I am experiencing a financial hardship, and as a result, am in default under the Loan Documents;

    B.   The Property is neither in a state of disrepair, nor condemned;

    C.   There has been no change in the ownership of the Property since I signed the Loan Documents; and

    D.   I am not a party to any pending bankruptcy proceeding or any litigation involving the Loan Documents, except to the extent I may be a defendant in a foreclosure action.

2.  **The Loan Workout Plan.** I will return this signed agreement no later than **November 25, 2011**. My trial payments will be due on **December 1, 2011, January 1, 2012** and **February 1, 2012**. I will pay the Lender **$1,093.01**, which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of **$217.66** ("Monthly Escrow Payment"). The escrow amount may vary at the time of the final modification due to changes in anticipated disbursements during the trial period, refunds or adjustments to the escrow account, or if we pay unexpected bills on your behalf. This escrow amount will also change over time with changes in your property taxes and insurance obligations.

    During the period (the "Trial Period") commencing on the date of this Agreement and ending on the earlier of: (i) the Modification Effective Date (as defined in Section 3) or (ii) termination of this Agreement, I understand and acknowledge that:

    H.   TIME IS OF THE ESSENCE under this Agreement;

    I.   The Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Agreement, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Agreement terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived;

    C.   All trial payments will be placed in suspense until they are made as agreed upon and will then be applied to the account after the modification has been completed as set forth in Section 3 and will reduce the unpaid principal balance.

---

¹If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

10_25_2011

15279_GMFR_AGMT

D.  When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

E.  If prior to the Modification Effective Date set forth in Section 3, (i) the Lender does not provide me with a signed copy of the Agreement; or (ii) I do not make the three Trial Period payments required under the Section 2 Plan in a timely manner; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make hereunder shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

F.  I understand that the Plan described in this Section 2 is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification under Section 3 and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

G.  I understand and agree that if I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, I am voluntarily entering into this modification for the benefits to be obtained thereby and not as a reaffirmation of the debt evidenced by the Note, and I further understand and agree, and the Lender, by its execution of this Agreement also agrees, that nothing contained herein is intended to impose personal liability for the Loan in violation of such discharge.

3.  **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **February 1, 2012** (the "Modification Effective Date") and all unpaid late charges and other non-interest fees up to the Modification Effective Date will be waived. The first modified payment will be due on **March 1, 2012**.

A.  The Maturity Date will be: **April 1, 2036**.

B.  The new Principal balance of my Note will be **$145,475.00** (the "New Principal Balance"). This balance includes all amounts and arrearages that will be past due (excluding those charges referenced in the paragraph above that are being waived). This New Principal Balance takes into account unpaid principal in the amount of **$81,085.71**, which has been forgiven.

C.  Interest at the rate of **5.12** percent will begin to accrue on the New Principal Balance as of **February 1, 2012** ("Interest Rate Effective Date").

I will begin to make modified monthly payments on **March 1, 2012** and on the same day of each month thereafter (the "Amortizing Payment Date"). Beginning on the Amortizing Payment Date, I will begin to make monthly payments in an amount necessary to repay the unpaid balance of the New Principal Balance in substantially equal monthly installments of principal and interest at the interest rate then in effect over the remaining term of the Loan.

**The estimated payment schedule for the modified Loan will be as follows:**

| Years | Interest Rate | Interest Rate Change Date | Estimated Monthly Payment Amount | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|----------------------------------|-------------------|----------------------------|
| 1-25  | 5.12%         | 2/1/2012                  | $1,093.01                        | 3/1/2012          | 290                        |

Lender will not accept multiple monthly payments in advance of their due date.

Notwithstanding the foregoing, I agree that unless sooner paid, all principal, interest and other amounts due under the Loan Documents shall be paid on the new Maturity Date. The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance or workout plan that I previously entered into with Lender for my Mortgage.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

G.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

H.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

I.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/ or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

J.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

K.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

L.   That Lender may collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender to any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my mortgage loan.

M.   I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4. M shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.   If I receive a separate notice from Lender that I am required to attend additional debt management counseling, I agree to promptly attend such counseling and provide evidence of attendance to Lender upon request.

O.   If this Agreement includes an extension of the maturity date for my loan and the Property is located in a Special Flood Hazard Area ("SFHA"), as part of this payment extension process, I understand that the Lender is required by law to send me another flood notice confirming the Property's flood status. Lender is required to do so even though it periodically checks to ensure that I have flood insurance. As a result, if I receive this additional notice from Lender, I agree to immediately sign the Flood Notice Acknowledgment, as required, and return it to Lender. I also acknowledge that I am responsible for continuing any insurance coverage on the Property beyond the original maturity date of my loan.

P.   If my loan is a home equity line of credit ("HELOC"), I understand that (i) access to funds in the line of credit has been permanently closed, so I am not able to obtain any further advances, notwithstanding any references in the Loan Documents, or otherwise, to the Loan being a line of credit; (ii) any devices used for accessing the credit line, such as

checks or credit cards, are void; (iii) if I have had separate balances on the HELOC that were charged interest at different interest rates, including fixed or variable rates, all balances are combined into a single balance that will be charged interest at the rate established in Section 3 of this Agreement, and I will not have the option of locking in or electing different interest rates or other payment terms in the future; (iv) if I have had the option to pay interest-only payments on any balances, all payments under this Agreement will be as set forth in Section 3 of this Agreement; and (v) if I have had special incentive interest rates involving a reduction in my interest rate for automatic payments or other relationships with the Lender, these special incentives no longer apply.

Q.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.



TO BE SIGNED BY BORROWER ONLY

**BORROWER** BETWEEN JPMorgan Chase Bank, N.A. AND **MICHAEL LANE**, LOAN NUMBER ███████████ WITH A MODIFICATION EFFECTIVE DATE OF **FEBRUARY 1, 2012**.

PLEASE
SIGN & DATE

In Witness Whereof the Borrower(s) have executed this agreement.

*Michael A Lane*                                    11-17-11

**Borrower – Michael Lane**                         Date

10_25_2011

15279_GMFR_AGMT



TO BE SIGNED BY LENDER ONLY

**LENDER** BETWEEN JPMorgan Chase Bank, N.A. AND **MICHAEL LANE**, LOAN NUMBER ███████████WITH A MODIFICATION EFFECTIVE DATE OF **FEBRUARY 1, 2012**.

In Witness Whereof the lender has executed this Agreement.

Lender

JPMORGAN CHASE BANK, N.A.

By: _____    Claudia Gr......a
                                 Vice President
Date: _____3-5-12_____


Mortgage Electronic Registration Systems, Inc.

By: _____        Ashley Rupp
                                 Assistant Secretary
Date: _____3·5·12_____

15279_GMFR_AGMT

# WaMu®

FEBRUARY 24, 2009

MICHAEL LANE
351 DABBS HOUSE RD
RICHMOND, VA 23223-4820

Via FEDEX

RE:    Washington Mutual Loan No. ██████████
       Property Address:  351  DABBS HOUSE RD
                          RICHMOND, VA 23223

Dear: MICHAEL LANE,

Thank you for your continued interest in our Homeownership Preservation Program. Enclosed is your proposed Loan Modification Agreement ("Agreement") (three identical sets of documents). The Agreement was prepared consistent with the terms you discussed with a loan workout specialist. The Agreement will not be binding or effective until it has been signed by both you and the lender in compliance with the instructions and conditions in this letter.

Please review the Agreement carefully and if you so desire, consult your own attorney. When you are satisfied with the Agreement and if you wish to proceed with the loan modification, sign all the documents **in black ink, in the presence of a notary** and keep one for your records and return two signed originals to Washington Mutual in the envelope provided. **Please sign your name exactly as it is printed under the signature line.** Where **appropriate, witness signatures must be from two <u>different</u> individuals and require their printed name under their signature.**

Along with the signed Agreement, you must also send a **certified check or cashier's check** in the amount of **$1,000.00.**    This amount includes charges for the modification fee and necessary advances including but not limited to recording fees, attorney fees and costs, returned check fees and late charge fees, if any. Additional sums may become due as a result of the timing of this letter and Agreement. Nothing in this letter or Agreement precludes our collections of additional advances.

The signed Agreement and certified or cashier's check must be received by Washington Mutual at the following address on or before  **MARCH 8, 2009.**

Washington Mutual
7255 Baymeadows Way
Jacksonville, FL 32256

A title search and endorsement to the original title policy or new title policy must be obtained prior to recording the Agreement.

There is no Agreement if:
- clear title is not confirmed to the satisfaction of the lender;
- the mortgage insurer does not approve; or
- there are any material adverse changes in the circumstances or property condition.

CVLR - 6/08
Online Documents, Inc.                    **Page 1 of 2**                    L6065CVR  0810

Failure to comply with the requirements and conditions within the specified time period may result in the resumption of normal collection and foreclosure efforts, without further notice.

Upon the Agreement becoming binding and effective, the principal and interest amount of your monthly payments will be **$1,422.63.** Your first payment including taxes and insurance (if applicable) is due **APRIL 1, 2009,** the total payment amount is **$1,422.63.** This payment amount is subject to change upon escrow analysis, if applicable.

If you are currently in an active bankruptcy, or have been discharged from a bankruptcy previously, then this letter and Agreement does not in any way mean that Washington Mutual, the Trust, or anyone acting on their behalf is attempting to hold you personally liable for the loan. This notice is intended to inform you of your rights as they refer to the lender's ability to foreclose on your property per the loan documents if the loan is not timely brought current. Further, by signing the Agreement you acknowledge that if you file a petition in bankruptcy, Washington Mutual, the Trust, or anyone acting on their behalf may elect to take any and all actions necessary, including, but not limited to voiding the Agreement, filing a Motion for relief from the automatic stay, a Motion to dismiss or any permitted state law remedies which, in Washington Mutual's judgment, are reasonably necessary to secure or protect the property and/or to enforce the rights under the original terms of your loan.

If you have any further questions please consult with your Washington Mutual Homeowner's Assistance representative by calling the toll-free phone number below.

Sincerely,


Homeowner's Assistance Department

**1-866-WAMU-YES (1-866-926-8937)**

We are a Debt Collector.

We have told a credit bureau about a late payment, missed payment, or other Default on your account.
This information may be reflected in your Credit Report.

CVLR - 6/08
Online Documents, Inc.                          **Page 2 of 2**                          L6065CVR  0810

After Recording Return To:
FIRST AMERICAN TITLE
P.O. BOX 27670
SANTA ANA, CA 92799-7670
ATTN: LMTS

This instrument was prepared by:
CASEY MOSS
JPMorgan Chase Bank
7255 BAYMEADOWS WAY
JACKSONVILLE, FL 32256-15540
1-866-926-8937

---

[Space Above This Line for Recording Data]

LOAN #: ▮▮▮▮▮▮▮

# LOAN MODIFICATION AGREEMENT
## (PROVIDING FOR FIXED INTEREST RATE)

This Loan Modification Agreement ("Agreement"), made this    1ST    day of
MARCH, 2009    between MICHAEL A. LANE

("Borrower") and   JPMorgan Chase Bank, National Association

("Lender"), amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security

4202A - 4/08 - All states except DE, MI, NC, NM, WI
Online Documents, Inc.                **Page  1  of  6**                    A4202C  0812

Instrument"), and Timely Payment Rewards Rider, if any, dated **MARCH 10, 2006,**                **and**
recorded **MARCH 21, 2006 IN BOOK 4087, PAGE 0113, AS INSTRUMENT NO.:**
**200606015690**                        of the Official Records of **Richmond City COUNTY**
                and (2) the Note bearing the same date as, and secured by, the Security Instrument, which
covers the real and personal property described in the Security Instrument and defined therein as the
"Property", located at
**351  DABBS HOUSE RD**
**RICHMOND, VA 23223**
the real property described being set forth as follows:
**See EXHIBIT 'A'**

        In consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **MARCH 1, 2009,**        the amount payable under the Note and the Security
    Instrument (the "Unpaid Principal Balance") is U.S.        $202,222.88  consisting of the
    unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender.
    Interest will be charged on the Unpaid Principal Balance at the yearly rate of        **7.250%**
    from **MARCH 1, 2009.**        Borrower promises to make monthly payments of
    principal and interest of U.S.        **$1,422.63**    beginning on the    **1ST**        day of
    **APRIL, 2009,**        and continuing thereafter on the same day of each succeeding month
    until principal and interest are paid in full. The yearly rate of        **7.250%**    will remain in
    effect until principal and interest are paid in full. If on    **APRIL 1, 2036**            (the
    "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as
    amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower
    is not a natural person and a beneficial interest in Borrower is sold or transferred) without
    Lender's prior written consent, Lender may require immediate payment in full of all sums
    secured by the Security Instrument.

**Exhibit "A"**

**Loan No.** ████████

**ALL TEAT CERTAIN LOT, PIECE OR PARCEL OF LAND, LYING AND BEING IN FAIRFIELD MAGISTERIAL DISTRICT, HENRICO COUNTY, VIRGINIA, AS SHOWN UPON A PLAT OF SURVEY MADE BY CIJPS. H. FLEET AND ASSOCIATES CIVIL ENGINEERS AND SURVEYORS DATED JUNE 21, 1954, ATTACHED TO A CERTAIN DEED DATED JULY 31, 1954, BETWEEN C.H. BILLIARD AND CHRISTINA M. BILLIARD, HIS WIFE GRANTORS AND THE THEN ACTING TRUSTEES OF THE BISHOP MEMORIAL METHODIST CHURCH, GRANTEES, WHICH DEED IS RECORDED IN TEE CLENE'S OFFICE OF TEE CIRCUIT COURT OF HENRICO COUNTY IN DEED BOOK 689, PAGE 130. SAID PLAT IS ENTITLED "PLAT OF PROPERTY SITUATED ON THE FMTERN LINE OF' DARES HOUSE ROAD AND NORTH OF NINE MILE ROAD", AND ACCORDING TO SAID PLAT MORE PARTICULAR DESCRIBED AS FOLLOWS:**

**BEGINNING AT A POINT ON THE EASTERN LINE OF DABBS HOUSE ROAD, NOW 50 FEET WIDE, AT AN IRON PIPE, WHICH SAID POINT OF BEGINNING IS DISTANT 645.88 FEET NORTHWARDLY FROM INTERSECTION OF THE NORTHERN LINE OF NINE MILE ROAD WITH TEE EASTERN LINE OF DABBS HOUSE ROAD, AS WIDENED, THENCE RUNNING NORTH 9 DEGREES 30' EAST 100 FEET ALONG AND FRONTING ON THE EASTERN LINE OF DABBS HOUSE ROAD TO AN IRON PIPE, THENCE RUNNING SOUTH 79 DEGREES 10; 30" EAST 150 FEET TO AN IRON PIPE, THENCE RUNNING 9 DEGREES 30' WEST 100 FEET TO AN IRON PIPE, THENCE RUNNING SOUTH 79 DEGREES 10' 50' WEST 140 FEET ALONG THE NORTHERN LINE OF DABBS HOUSE ROAD THE POINT AND PLACE OF BEGINNING.**

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if

approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

6.  This Agreement modifies an obligation secured by an existing security instrument recorded in **Richmond City COUNTY, VIRGINIA,**                                        upon which all recordation taxes have been paid. As of the date of this Agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is **$196,114.53.**   The principal balance secured by the existing security instrument as a result of this Agreement is       **$202,222.88,** which amount represents the excess of the unpaid principal balance of this original obligation.


   **SEE "LOAN MODIFICATION AGREEMENT SIGNATURE ADDENDUM" ATTACHED HERETO, AND MADE A PART HEREOF.**

## LOAN MODIFICATION AGREEMENT SIGNATURE ADDENDUM

*Michael Lane*

_____    _____
MICHAEL LANE                                Date

STATE OF VIRGINIA
COUNTY ss:  Henrico

The foregoing instrument was acknowledged before me this
5th March 2009 (date) by Michael Lane.
_____

_____ (name of person acknowledged).

*Celestine Brown*
_____
Notary Public

CELESTINE BROWN
Notary Public
Commonwealth of Virginia
223685
My Commission Expires Jun 30, 2012

My Commission expires: 6|30|2012

4202A - 4/08 - All states except DE, MI, NC, NM, WI
Online Documents, Inc.                    Page   5   of  6                    A4202C  0812

## LOAN MODIFICATION AGREEMENT SIGNATURE ADDENDUM

TRUST: JPMorgan Chase Bank, National Association
BY: JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

_Jarred Hatchell_                    3-12-09        _____
Jarred Hatchell                      DATE          WITNESS
VICE PRESIDENT
                                                   _____
                                                   WITNESS


State of SOUTH CAROLINA
County of Florence

On this ____ day of ___March___ before me personally appeared
Jarred Hatchell, VICE PRESIDENT of JPMorgan Chase Bank who provided
satisfactory evidence of his/her identification to be the person whose
name is subscribed to this instrument, and he/she acknowledged that he/she
executed the foregoing instrument.

_____
(Name / Title)
Florence, SOUTH CAROLINA
My commission expires: _____

KYEWANNA GREEN
Notary Public, South Carolina
My Commission Expires
January 12, 2019


4202A - 4/08 - All states except DE, MI, NC, NM, WI
Online Documents, Inc.          **Page  6  of  6**                    A4202C  0812

# ADDENDUM TO LOAN MODIFICATION AGREEMENT

THIS ADDENDUM is made this   24TH   day of FEBRUARY, 2009,   and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement made by the undersigned (the "Borrower") in favor of JPMorgan Chase Bank, National Association

(the "Lender") and dated the same date as this Addendum (the "Agreement").

The Borrower and the Lender enter into the Agreement with reference to the following stipulated fact:

A.  Pursuant to a Purchase and Assumption Agreement dated September 25, 2008, JPMorgan Chase Bank, National Association acquired loans and certain other assets of Washington Mutual Bank from the Federal Deposit Insurance Corporation acting as receiver, including but not limited to the Note and Security Instrument referenced in the Agreement. Although your loan was acquired by JPMorgan Chase Bank, your loan will continue to be serviced under the name "Washington Mutual" and you will make your payments to Washington Mutual.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.

_____ (Seal)

MICHAEL LANE

Instrument Control Number

LR 201300028423    7/12/2013 08:00 AM

BK 5 I 6 2 PG I 9 2 4

# Commonwealth of Virginia
## Land Record Instruments
## Cover Sheet - Form A

[ILS VLR Cover Sheet Agent 1.0.66]

| | | |
|---|---|---|
| Date of Instrument: | [6/25/2013    ] | |
| Instrument Type: | [ASGMT    ] | |
| Number of Parcels | [    1] | |
| Number of Pages | [    1] | |
| City ☐ County [x] | [Henrico County    ] | (Box for Deed Stamp Only) |

**First and Second Grantors**

T A X   E X E M P T ☐ ☐
C O R P [x] ☐

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [MORTGAGE ELECTRO ] | [ ] | [ ] | [NOMINEE ] |
| [LANE ] | [MICHAEL ] | [A ] | [ ] |

**First and Second Grantees**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [JPMC SPECIALTY MO ] | [ ] | [ ] | [ ] |
| [ ] | [ ] | [ ] | [ ] |

| | | |
|---|---|---|
| Grantee Address | (Name) | [JPMC SPECIALTY MORTGAGE LLC F/K/A WM SPECIALTY ] |
| | (Address 1) | [700 KANSAS LANE, MC 8000 ] |
| | (Address 2) | [ ] |
| | (City, State, Zip) | [MONROE ] [LA ] [71203 ] |

Consideration [0.00    ] **Existing Debt** [0.00    ] **Assumption Balance** [0.00

| | |
|---|---|
| Prior Instr. Recorded at: City ☐ County [x] | [Henrico County    ] Percent. in this Juris. [    100] |
| Book [4087 ] | Page [0113 ]    Instr. No [LR 200606015 ] |
| Parcel Identification No (PIN) | [807-723-2632 ] |
| Tax Map Num.    (if different than PIN) | [807-723-2632 ] |
| Short Property Description | [* ] |
| | [ ] |
| Current Property Address  (Address 1) | [351 DABBS HOUSE RD ] |
| (Address 2) | [ ] |
| (City, State, Zip) | [RICHMOND ] [VA ] [23223 ] |

| | | |
|---|---|---|
| Instrument Prepared by | [J. Lesinski/NTC ] |
| Recording Paid for by | [Nationwide Title Clearing, Inc. ] |
| Return Recording to  (Name) | [Attn: Jessica Lesinski ] |
| (Address 1) | [Nationwide Title Clearing, Inc. ] |
| (Address 2) | [2100 Alt 19 North ] |
| (City, State, Zip) | [Palm Harbor ] [FL ] [34683 ] |
| Customer Case ID | [RJPCAS ] [ ] [WAMUY74C ] |

Cover Sheet Page # 1 of 1

Represents Redacted Information



BK5162PG1925

Tax Map# 807-723-2632

## NOTICE OF CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS, WHOSE ADDRESS IS PO BOX 2026, FLINT, MI, 48501, (ASSIGNOR)**, by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to **JPMC SPECIALTY MORTGAGE LLC F/K/A WM SPECIALTY MORTGAGE LLC, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)**.

Said Deed of Trust dated 03/10/2006 made by **MICHAEL A. LANE** to **COMMONWEALTH TRUSTEES LLC**, trustee, and recorded in Book 4087, Page 0113, Document # LR 200606015690 in the amount of $200,000.00 in the office of the Recorder of (Town/City) RICHMOND, County of HENRICO, Virginia.

IN WITNESS WHEREOF, this Assignment is executed on _06|20_ /2013 (MM/DD/YYYY).
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS**

By: _Carl O. Collins_
    _Carl O. Collins_                    .
    **VICE PRESIDENT**

STATE OF LOUISIANA
PARISH OF OUACHITA
On _06|20_ /2013         (MM/DD/YYYY),        before        me        appeared
_Carl O. Collins_            ., to me personally known, who did say that he/she/they is/are the
VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_Helen P Tubbs_
_Helen P Tubbs_                                  HELEN P. TUBBS
Notary Public - State of LOUISIANA              OUACHITA PARISH, LOUISIANA
Commission expires: Upon My Death                 LIFETIME COMMISSION
                                                   NOTARY ID# 40392
Prepared By/Return To:
E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

JPCAS▮▮▮1 WAMU▮▮▮▮        MIN ▮▮▮▮▮▮▮▮▮▮▮MERS PHONE 1-888-679-6377
     [C] FRMVA1

RECORDED IN THE CLERK'S OFFICE OF
HENRICO COUNTY
ON _7-13-13_ AT _3:00PM_
YVONNE G. SMITH, CLERK
BY _Patricia J. Chin_ DC

BK 5668 PG 1409

Tax Map#: 807-723-2632

*6 71*

## NOTICE OF CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, JPMC SPECIALTY MORTGAGE LLC F/K/A WM SPECIALTY MORTGAGE LLC, WHOSE ADDRESS IS C/O JPMORGAN CHASE BANK, NA, 700 KANSAS LANE, MC 8000, MONROE, LA 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (800)935-9935, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust dated 03/10/2006 made by MICHAEL A. LANE to COMMONWEALTH TRUSTEES LLC, trustee, and recorded in Book 4087, Page 0113 and Instrument # 200606015690 in the amount of $200,000.00 in the office of the Recorder of (Town/City) RICHMOND, County of HENRICO, Virginia.

IN WITNESS WHEREOF, this Assignment is executed on 06 / 19 / 2017 (MM/DD/YYYY).

JPMC SPECIALTY MORTGAGE LLC F/K/A WM SPECIALTY MORTGAGE LLC

By: _____
QUATEADRA SMITH
VICE PRESIDENT

STATE OF LOUISIANA
PARISH OF OUACHITA
On 06 / 19 / 2017 (MM/DD/YYYY), before me appeared QUATEADRA SMITH, to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMC SPECIALTY MORTGAGE LLC F/K/A WM SPECIALTY MORTGAGE LLC and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Katrina Marie Johnson 68375
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

KATRINA MARIE JOHNSON, NOTARY PUBLIC
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 68375

Prepared By:
QUATEADRA SMITH _____, JPMorgan Chase Bank, N.A., 780 Kansas Lane, Suite A, Monroe, LA, 71203, 800-401-6587

When Recorded Return To:
Roosevelt Management Company - Attn: Dan Tharpe, 1755 Wittington Place Suite 400, Dallas, TX 75234

JPMC2 ___ NPL 25 RUSHMORE_WL (R) ___ PREP-11 FRMVA1

When Recorded Return to:
Attn: LR Department (Cust: 671)
First American Mortgage Solutions
4000 W. Metropolitan Drive, Suite 400
Orange, CA 92868

INSTRUMENT # 201700032793
RECORDED IN THE CLERK'S OFFICE OF
HENRICO COUNTY ON
OCTOBER 11, 2017 AT 08:57AM

HEIDI S. BARSHINGER, CLERK
RECORDED BY: WAP

# VIRGINIA LAND RECORD COVER SHEET
## FORM A – COVER SHEET CONTENT

| | |
|---|---|
| Instrument Date: | 6/19/2017 |
| Instrument Type: | ASGMT |
| Number of Parcels: 1 | Number of Pages: 1 |
| [ ] City [X] County | |
| | HENRICO |

**RECORDED IN**
**COUNTY OF HENRICO, VA**
**HEIDI S. BARSHINGER**
**CLERK OF CIRCUIT COURT**

| | |
|---|---|
| FILED | Oct 11, 2017 |
| AT | 08:57 am |
| BOOK | 05668 |
| START PAGE | 1408 |
| END PAGE | 1409 |
| INSTRUMENT # | |
| | 201700032793 |

WAP

TAX EXEMPT?    VIRGINIA/FEDERAL LAW

| | |
|---|---|
| [ ] Grantor: | |
| [ ] Grantee: | |
| Consideration: | $0.00 |
| Existing Debt: | $0.00 |
| Actual Value/Assumed: | $0.00 |

PRIOR INSTRUMENT UNDER § 58.1-803(D):

| | |
|---|---|
| Original Principal: | $0.00 |
| Fair Market Value Increase: | $0.00 |

*(Area Above Reserved For Deed Stamp Only)*

| | | |
|---|---|---|
| Original Book Number: 4087 | Original Page Number: 0113 | Original Instrument Number: 200606015690 |

Prior Recording At: [ ] City [X] County

HENRICO    Percentage In This Jurisdiction: 100%

### BUSINESS / NAME

| | | |
|---|---|---|
| 1 | [ ] Grantor: | LANE, MICHAEL A |
| | [ ] Grantor: | |
| 1 | [X] Grantee: | JPMORGAN CHASE BANK, NATIONAL ASSOCIATION |
| | [ ] Grantee: | |

GRANTEE ADDRESS
Name: JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
Address: 700 KANSAS LANE MC 8000
City: MONROE    State: LA    Zip Code: 71203

| | | |
|---|---|---|
| Book Number: 4087 | Page Number: 0113 | Instrument Number: 200606015690 |

Parcel Identification Number (PIN): 807-723-2632    Tax Map Number: 807-723-2632
Short Property Description:

Current Property Address: 351 DABBS HOUSE RD
City: HENRICO    State: VA    Zip Code: 23233
Instrument Prepared By: TIFFANY RIOS    Recording Paid By: FIRST AMERICAN MORTGAGE SOLU
Recording Returned To: FIRST AMERICAN MORTGAGE SOLUTIONS
Address: 4000 W METROPLITAN DR SUITE 400
City: ORANGE    State: CA    Zip Code: 92868

FORM CC-1570  Rev: 7/15    Page 1 of 1    Cover Sheet A
§§ 17.1-223, 17.1-227.1, 17.1-249

Copyright © 2014 Office of the Executive Secretary, Supreme Court of Virginia. All rights reserved.

BK 5668 PG 141

Tax Map#: 807-723-2632

## NOTICE OF CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **JPMORGAN CHASE BANK, N.A., WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT, WHOSE ADDRESS IS 60 LIVINGSTON AVENUE, ST. PAUL, MN 55107-2292, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust dated 03/10/2006 made by **MICHAEL A. LANE** to **COMMONWEALTH TRUSTEES LLC,** trustee, and recorded in **Book 4087, Page 0113 and Instrument # 200606015690** in the amount of $200,000.00 in the office of the Recorder of (Town/City) RICHMOND, County of **HENRICO, Virginia.**

**IN WITNESS WHEREOF,** this Assignment is executed on _06 / 19 / 2017_ (MM/DD/YYYY).
**JPMORGAN CHASE BANK, N.A.**

By: _____
QUATEADRA SMITH
**VICE PRESIDENT**

STATE OF LOUISIANA
PARISH OF OUACHITA
On _06 / 19 / 2017_ (MM/DD/YYYY), before me appeared
QUATEADRA SMITH     **VICE PRESIDENT** _____, to me personally known, who did say that he/she/they is/are the
_____ of JPMORGAN CHASE BANK, N.A. and that the instrument
was signed on behalf of the corporation (or association), by authority from its board of directors, and that
he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Katrina Marie Johnson 68375

KATRINA MARIE JOHNSON, NOTARY PUBLIC
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 68375

Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Prepared By:
QUATEADRA SMITH _____, JPMorgan Chase Bank, N.A., 780 Kansas Lane, Suite A, Monroe, LA,
71203, 800-401-6587

~~When Recorded Return To:~~
Roosevelt Management Company - Attn: Dan Tharpe, 1755 Wittington Place Suite 400, Dallas, TX 75234

JPMC2 _____ NPL 25 RUSHMORE_WL     PREP-1] FRMVA1

**When Recorded Return to:**
Attn: LR Department (Cust: 671)
First American Mortgage Solutions
4000 W. Metropolitan Drive, Suite 400
Orange, CA 92868

INSTRUMENT # 201700032794
RECORDED IN THE CLERK'S OFFICE OF
HENRICO COUNTY ON
OCTOBER 11, 2017 AT 08:57AM

HEIDI S. BARSHINGER, CLERK
RECORDED BY: WAP

# VIRGINIA LAND RECORD COVER SHEET
## FORM A – COVER SHEET CONTENT

Instrument Date: 6/19/2017

Instrument Type: ASGMT

Number of Parcels: 1        Number of Pages: 1

[ ] City [X] County

HENRICO

TAX EXEMPT?        VIRGINIA/FEDERAL LAW

[ ] Grantor:

[ ] Grantee:

Consideration: $0.00

Existing Debt: $0.00

Actual Value/Assumed: $0.00

*PRIOR INSTRUMENT UNDER § 58.1-803(D):*

Original Principal: $0.00

Fair Market Value Increase: $0.00

Original Book Number: 4087        Original Page Number: 0113        Original Instrument Number: 200606015690

Prior Recording At: [ ] City [X] County

HENRICO        Percentage In This Jurisdiction: 100%

### BUSINESS / NAME

| 1 | [ ] Grantor: | LANE, MICHAEL A |
| | [ ] Grantor: | |
| 1 | [X] Grantee: | U.S. BANK NATIONAL ASSOCIATION |
| 2 | [X] Grantee: | RMAC TRUST, SERIES 2016-CTT |

GRANTEE ADDRESS

Name: U.S. BANK NATIONAL ASSOCIATION

Address: 60 LIVINGSTON AVENUE

City: ST. PAUL        State: MN        Zip Code: 55107

Book Number: 4087        Page Number: 0113        Instrument Number: 200606015690

Parcel Identification Number (PIN): 807-723-2632        Tax Map Number: 807-723-2632

Short Property Description:

Current Property Address: 351 DABBS HOUSE RD

City: HENRICO        State: VA        Zip Code: 23233

Instrument Prepared By: TIFFANY RIOS        Recording Paid By: FIRST AMERICAN MORTGAGE SOLU

Recording Returned To: FIRST AMERICAN MORTGAGE SOLUTIONS

Address: 4000 W METROPOLTIAN DR  SUITE 400

City: ORANGE        State: CA        Zip Code: 92868

RECORDED IN
COUNTY OF HENRICO, VA
HEIDI S. BARSHINGER
CLERK OF CIRCUIT COURT
FILED        Oct 11, 2017
AT        08:57 am
BOOK        05668
START PAGE        1410
END PAGE        1411
INSTRUMENT #
201700032794

WAP

BK05668PG1410

*(Area Above Reserved For Deed Stamp Only)*

Copyright © 2014 Office of the Executive Secretary, Supreme Court of Virginia. All rights reserved.

**Exhibit C**

**COUNTY OF HENRICO - FINANCE DEPARTMENT**
**REAL ESTATE ASSESSMENT DIVISION**

Address: 4301 E. Parham Rd
Henrico, VA 23273-2745
Phone: 804-501-4300
Fax: 804-501-5420

Print Friendly

County Home

Back

## Base Information

| | | | |
|---|---|---|---|
| **Parcel ID** | 807-723-2632 | **Parcel Address** | 351 DABBS HOUSE RD |
| | | **Appraiser** | N |
| **State Code** | Resid (Urban) | **Neighborhood** | 5-060 |
| **Use Code** | 223 Res - Imprv < 5 Acres | **Acreage** | |
| **Tax Type** | Taxable | **Owner (Jan 1)** | LANE MICHAEL A |
| **Zoning** | A-1 | **Owner (Cur)** | LANE MICHAEL A |
| **Tax Dist** | Regular | **Mailing Address** | |
| **Magisterial** | Varina | | 351 DABBS HOUSE RD |
| **Subdivision** | Acreage | | HENRICO VA |
| **Section** | | **Zip** | 23223-4820 |
| **Block** | | **Old Map #** | 01460A0000 0099 |
| **Lot** | .343 acres | **Pre 1992 Map #** | 8 B1 85 |
| | | **Map Page #** | 230 |

## Residential Information

| | | | | | |
|---|---|---|---|---|---|
| **Style** | 02 Cape Cod | **No. of Stories** | 1.5 | **Sq Ft Finished Living** | 2,580 |
| **Year Built** | 1956 | **Total Rooms** | 7 | **Finished Attic** | 0 |
| **Grade** | C-2 | **Bedrooms** | 3 | **Unfinished Living** | 0 |
| **Ext. Walls** | 06 Brick (3 or 4) | **Full Bathrooms** | 2 | **Basement** | 1,184 |
| **Roof** | 1 Composition | **Half Bathrooms** | 0 | **Finished Basement** | 0 |
| **Heating** | 04 Radiant | **Fireplace(s)** | 1 | **Basement Type** | 4 Basement |
| **Air Cond.** | 02 No | **No. of Chimneys** | 1 | **Basement Garage** | 0 |

## Last 5 Transfers

| Sale Date | Sale Price | Deed Book | Page | Owner | Sale Comment | # of Parcels |
|---|---|---|---|---|---|---|
| 07/01/1999 | $84,000 | 2926 | 1420 | LANE MICHAEL A | | 1 |
| 01/01/1988 | $65,000 | 2116 | 579 | GODSEY JR WILSON D & J S | | |

## Last 5 Assessments

| Year | Date | Land | Land Use | Improvements | Total |
|---|---|---|---|---|---|
| 2018 | 01/30/2018 | $22,400 | | $117,900 | $140,300 |
| 2017 | 01/31/2017 | $22,400 | | $117,900 | $140,300 |
| 2016 | 01/29/2016 | $22,400 | | $111,700 | $134,100 |
| 2015 | 02/02/2015 | $22,400 | | $111,700 | $134,100 |
| 2014 | 01/30/2014 | $22,400 | | $111,700 | $134,100 |

## Additions, Outbuildings and Features

| Type | Improvement | Units/Area |
|---|---|---|
| Addition | Porch Screened | 84 |

## Land Information

| Type | # Units | Unit Type | Sqft | Zoning |
|---|---|---|---|---|
| AH | 1 | ACREAGE | 43,560 | A-1 |

## Notes

7-1-99 Acreage changed according to plat for year 2000. DB 2926-1422. Begining acreage .345 changed .343 acres.

## Image



01460A0000    0099
**Last Photo Update 02/02/1997**



Sketch Details

| Code | Desc | Gross | Living |
|------|------|-------|--------|
| 1FF | 1st Fl Finished | 1,772 | 1,772 |
| BMU | Basement Unfinished | 1,184 | 0 |
| 3QF | 3/4 St Finished | 648 | 648 |
| 2QF | 1/2 St Finished | 160 | 160 |
| PSC | Porch Screened | 84 | 0 |

**Legal Disclaimer:** Non-confidential real estate assessment records are public information under Virginia law, and Internet display of non-confidential property information is specifically authorized by Virginia Code 58.1-3122.2. While the Real Estate Division has worked to ensure that the assessment data contained herein is accurate, Henrico County assumes no liability for any errors, omissions, or inaccuracies in the information provided or for any reliance on any maps or data provided herein. Please consult County records in the Real Estate Division for official information.